BAILLIE, EXR., ET AL. *v.* HEIMSATH, ADMR., ET AL.

*Wills—Verdict setting aside will to be sustained by reviewing court, when—Unanimous concurrence upon weight of evidence—Errors not prejudicial where substantial justice done in denying probate—Evidence—Mental capacity of testator—Admissibility of testimony of nonexpert witness, not subscriber to will—Opinion whether testator possessed sufficient understanding to transact business affairs—Error to admit opinion whether testator "right-minded"—All influence not undue influence—Fair and honest persuasion, not undue influence—"Testamentary capacity" defined—Executing will during last sickness not significant of incapacity—Depositions—Incompetent answers permitted to be read—Error not cured by instructing jury to disregard same, when.*

1. Verdict setting aside will must stand so far as weight of evidence is concerned, unless all members of reviewing court join in finding it manifestly against weight of evidence, even if the court would, as jurors, have reached a different conclusion.

2. If, from a consideration of the whole record, the reviewing court believes substantial justice was done by decree denying probate of will, alleged errors will not be deemed prejudicial and will be disregarded.

3. A nonexpert witness, who is not witness to the will, may not testify to his opinion that testator lacked mental capacity, until he testifies to facts within his knowledge tending in some degree to indicate mental weakness.

4. A nonexpert witness, who is not a witness to the will, is confined, as a basis for his opinion that testator lacked mental capacity, to facts and circumstances within his knowledge which he has delineated before the jury.

5. Duly qualified nonexpert witness, after stating facts upon which opinion is based, may be asked whether, in his opinion, testator possessed sufficient understanding to

[1] Wills, 40 Cyc. p. 1358; [2] Appeal and Error, 4 C. J. § 2834; [3] Evidence, 22 C. J. § 700; [4] Id., § 699; [5] Id., §§ 652, 696.

App.]        Baillie, Exr., v. Heimsath, Admr.

transact ordinary business incident to the management
of his property and household affairs.

6. Permitting the answering of questions put to nonexpert
   witnesses, who were not witnesses to the will, whether
   they considered the testator was right-minded, was error.

7. After timely objection, permitting incompetent answers in
   depositions to be read, and then instructing jury to dis-
   regard them, was error.

8. Not all influence is undue influence.

9. Fair and honest persuasion to will property to petitioner,
   which does not cause the testator to do what he does not
   .want to do, is not undue influence.

10. Testator may make a will if he has capacity to under-
    stand and appreciate his property, and the natural objects
    of his bounty, and to convey that information and his
    wishes to the party drawing his will.

11. That will was made during last sickness of testator and a
    few days before his death is not significant on question
    of his capacity to make a will, where no testimony shows
    that his sickness affected his mental capacity at that
    time, and his will expresses the general idea of former
    wills, one of them made four or five years before.

(Decided—June 1, 1925.)

·ERROR:   Court of Appeals for Cuyahoga county.

*Mr. H. H. Chapman* and *Messrs. Scott & Bissell,*
for plaintiffs in error.

*Messrs. Kelley, David & Cottrell,* for defendants
in error.

WASHBURN, J.   Louis Heimsath and his wife,
being middle-aged people living in Findlay, Ohio,
joined the Salvation Army. Mr. Heimsath was
possessed of some property, not a great amount,

[6] Id., § 696 (Anno.); [7] Appeal and Error, 4 C. J.
§ 2973; [8] Wills, 40 Cyc. p. 1144; [9] Id., p. 1147; [10]
Id., p. 1004; [11] Id., p. 1010.

and, after his wife died, some fifteen or sixteen years ago, he devoted all of his time and income to the work of the Salvation Army, mostly in Findlay, but the last three years in and about Cleveland. He was a good man, very devout and enthusiastic in his work, universally liked by all the people with whom he came in contact.

He had no near relatives who were dependent upon him or who were justified in expecting, in the natural course of events, that he would will them any part of his property. He had one brother whom he very seldom saw or heard from, and who, he felt, did not approve of his work in the Salvation Army. His other relatives consisted of nieces and nephews who for the most part had never seen him.

During the last four or five years he made three wills, and in all of them he gave all of his property to the Salvation Army or to his associates engaged in the work of the Salvation Army. His last will was made during his last sickness and about eight days before his death. That will was contested, and by the verdict of the jury and judgment of the court it was set aside. In this error proceeding we are asked to reverse that judgment; the claim being that the court erred in rulings upon the admissibility of evidence, and in the charge to the jury, and that the judgment is manifestly against the weight of the evidence.

We recognize, of course, that this case is the same as an ordinary civil action, and that, where such a case has been fairly submitted to a jury upon proper and competent evidence, and upon proper instructions, a reviewing court is not justi-

fied in setting aside the findings of the jury merely because the members of the court, if sitting as jurors in the first instance, would have reached a different conclusion than that reached by the jury, and that, so far as the weight of the evidence is concerned, the verdict must stand, unless such reviewing court finds that it is manifestly against the weight of the evidence, and all the members of the reviewing court join in such finding, and, furthermore, that, as to other errors, if from a consideration of the whole record the reviewing court is of the opinion that substantial justice has been done, alleged errors should not be deemed to be prejudicial and should be disregarded.

The evidence on behalf of the plaintiffs was practically all in the form of depositions, and, when the plaintiffs' testimony was offered, a large number of objections were made and many of them were sustained. In our judgment, practically all of the objections which were overruled should have been sustained.

A nonexpert witness, not a witness to the will, should not be permitted to testify to his opinion that the testator *lacked* mental capacity until he shall have testified to facts within his knowledge tending, at least in some degree, to indicate mental weakness. Such witness should be confined, as a basis for his opinion, not only to facts and circumstances within his knowledge, but to facts and circumstances which he has delineated before the jury. In no other way can the jury properly determine what weight should be given to the opinion of such nonexpert witness.

The rules above indicated were not observed in

the taking of the testimony on behalf of the plaintiffs. Witnesses were permitted to express an opinion when they had not testified to any facts within their knowledge tending to indicate mental weakness, and, with the exception of one or two instances, no witness was asked to base his opinion solely upon the facts and circumstances concerning the testator which he had detailed to the jury.

It is true, however, that in most instances the opinions of the witnesses were not very prejudicial to the defendant.

The usual question is whether or not the testator, in the opinion of the witness, basing his opinion upon facts detailed by the witness, was a person of sound mind, and, for the purpose of illustrating the testator's mental condition, it is not unusual or improper to ask a duly qualified witness whether, in his opinion, the testator possessed sufficient understanding to transact the ordinary business incident to the management of his property and household affairs; but in the case at bar many of the witnesses were asked if they considered that the testator was "right-minded." We do not think those questions were proper, and it was error to permit them to be answered.

Moreover, the trial judge had before him, in the depositions, the answers which it was proposed to read, and it was improper, timely objection being made, to permit incompetent answers to be read and then instruct the jury to disregard them. This error was committed several times.

It is also complained that the court committed error in the charge before argument, and in the general charge, in reference to undue influence.

We are of the opinion that there was no evidence tending to prove undue influence. It is not all influence that is undue influence. Many influences entirely justified and lawful in character might obtain to induce a testator to place provisions in his will which would not otherwise be there. Treating a testator kindly, with consideration and with friendliness, might influence him in making a will in favor of such friendly and accommodating person, but that would not necessarily be undue influence. One might ask a testator to will some of his property to him, and, if he used only fair and honest persuasion, and the influence exerted was not such as to cause the testator to do something that he really did not want to do, it would not be undue influence; but in this case, as we have said, we find no evidence whatever of undue influence, and we hold that it was error for the trial judge to charge as he did upon that subject.

In this case the testator had no relative to whom, under all the circumstances, it would be natural to expect him to leave his property; he was genuinely and intensely interested in the work of the Salvation Army, in which he had found so much solace and comfort after the death of his wife, and to the work of which he had given freely of his slender means, and all of his time, for several years. He believed in it, and his belief was rational, intelligent, and consistent throughout; and what would be more natural than that he should desire that his property should be devoted to the furtherance of the work he knew so well and believed in so thoroughly, and that some of it should go to those with whom he had worked and lived and by whom

he had been treated with kindness and consideration? The property was his, and he had a right to dispose of it as he saw fit; it is not the province of a court and jury to deprive him of that right if he had mental capacity to understand and appreciate the property he had and the natural objects of his bounty, and mental capacity to convey that information and his wishes concerning the same to the party drawing his will, if in doing so he was not unduly influenced by others to make a will which he really did not desire to make.

We have fully read and considered the very long record in this case, and we find very little competent evidence tending to prove want of capacity to make a will. In our judgment the evidence is overwhelmingly to the contrary. In the light of the record we are unable to account for the verdict in this case, and it is plainly and unmistakably against the weight of the evidence.

It is not significant in this case that the will in question was made during his last sickness and just a few days before his death, for there is no testimony that his sickness at that time affected his mental capacity, and his will carried out the general idea expressed by him in his former wills; one of them being made four or five years before his death.

The testator was not an educated man, he had no great mind, but to him his religion was very real, and it brought forth as fruit many years of faithful and helpful service to those less fortunate than he. Sad indeed will be the day when it shall become generally recognized that such a simple man, with such a simple faith, resulting in so

much good, is by his very religion and good works rendered incapable of disposing of his property by will.

The errors disclosed by the record in the rulings on the admission of evidence and in the charge of the court were prejudicial under the circumstances of this case, and for such errors the judgment is reversed and the cause remanded.

*Judgment reversed, and cause remanded.*

PARDEE, P. J., and FUNK, J., concur.

Judges of the Ninth Appellate District, sitting in place of Judges SULLIVAN, LEVINE, and VICKERY, of the Eighth Appellate District.